IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| MARSHALL WEST AND ROSA WEST, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 3:20-CV-05019-MDH |
| ) | |
| FOREMOST PROPERTY & CASUALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 56). For the reasons set forth herein, the Motion is **DENIED**.

## BACKGROUND

Marshall and Rosa West's home, located in Lawrence County, Missouri, was damaged during a series of storms, which included multiple tornadoes and thunderstorms which occurred on April 30, 2019. All parties agree that the Wests filed their claim upon discovery of the casualty loss.

Foremost issued policy number 107-0689335883-18, a policy of Homeowners Insurance for Manufactured Homes, to Marshall West and Rosa West (the "policy"). The "Insuring Agreement" of the policy states:

> With your payment of the premium, we agree to provide only the Coverages, Amounts of Insurance and Limits of Liability you have selected as shown on the Declarations Page. This is subject to all policy terms and conditions. This policy, which includes the Declarations Page and endorsements, if any, is the entire agreement between you and us regarding the insurance coverages expressed in it and supersedes all previous agreements regarding those coverages, either oral or written.

1

. "Section I – Your Property Coverages" of the policy states:

> We provide insurance only for insured losses that occur during the Policy Period shown on the Declarations Page.

"Coverage A – Dwelling" of Section I of the policy states:

> We insure:
> 1. Your dwelling that is described on the Declarations Page.
> [ ]
> We do not insure:
> [ ]
> Loss, including damage or remediation costs, caused by or resulting from the presence of mold, mildew, or other fungi, their secretions, and dry and wet rot of any kind regardless of the cause condition or loss that led to their formation or growth.

"Coverage C – Personal Property" of Section I of the policy states:

> We insure personal property you own or use anywhere in the world.
> [ ]
> Property We Do Not Insure
> We do not insure:
> [ ]
> Loss, including damage or remediation costs, caused by or resulting from the presence of mold, mildew, or other fungi, their secretions, and dry and wet rot of any kind regardless of the cause, condition or loss that led to their formation or growth.

"Section I – Insured Perils" of the policy states:

> We insure risk of direct, sudden and accidental physical loss to the property described in Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property unless the loss is excluded elsewhere in this policy.

"Section I – Exclusions" of the policy states:

> We do not insure loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
> [ ]
> Loss caused by:
> a. Wear and tear, marring, scratching, deterioration, rust or other corrosion.

> b. Inherent vice, latent defect, mechanical breakdown, manufactured defect or mechanical failure.
> c. Mold, mildew, or other fungi, their secretions, and dry and wet rot of any kind.
> [ ]
> Loss caused by leakage from rain, sleet or snow or its resulting damage whether or not wind-driven.
> This exclusion does not apply to ensuing loss caused by fire or explosion.

The "Policy Conditions" of the policy states:

> What to Do When You Have a Loss.
> [ ]
> If you have a loss, you must protect your dwelling, other structures or personal property from any further damage. If you fail to do so, any further damage will not be insured by this policy.

Foremost offered to pay a total of $1,719.86 for property damages covered by the policy. Included in this amount, Foremost issued payment for tarping, including the purchase of a tarp and labor costs. (*Doc. 57 Ex. 6, ¶ 18 at F0109-10*). There is no evidence that the tarp was ever installed. According to Foremost, all other damages to the manufactured home were caused either by long-term causes, which are not "direct, sudden, and accidental", or causes that are excluded under the policy's language. *See Defendant's Suggestions in Support* at 4. Plaintiffs claim that the damage to their property from the storm resulted in a casualty loss in an amount no less than $52,000.00, or possibly a loss of $182,034.00 "if Defendant continues to permit the structure to deteriorate by denying Plaintiff's claim." *See Complaint, 2*..

On May 8, 2019, Foremost's claims adjuster inspected the Wests' property. The adjuster did not complete the inspection of the roof due to the rainy conditions, but observed holes in roof towards the eaves of the home. At the conclusion of the initial inspection, Foremost's claims adjuster did not instruct the Wests to tarp the roof, nor did he inform the Wests that failure to tarp

their roof would exclude their casualty losses under the insurance policy. *R. West Depo, 37:18-38:6.*

On May 9, 2019, a second claims adjuster, Jeremy Morton, from Foremost inspected the Wests' property. Mr. Morton was able to access the roof, took photos of the condition of the roof, and in addition to confirming the holes identified by the previous adjuster, Mr. Morton identified a hole on the South ridge of the roof. At the conclusion of Mr. Morton's inspection, Mr. Morton did not instruct the Wests to tarp the roof, nor did he inform the Wests that failure to tarp their roof would exclude their casualty losses under the insurance policy. *R. West Depo, 39:13-19.*

On May 14, 2019, Mr. Morton sent the Wests a letter denying a substantial portion of their claim; namely damages related to a glass-sliding door, shingles along the ridge of the home, penetrations to the roof along the ridge of the home, and damages related to rainwater that permeated the Wests' home through the shingles and penetrations caused by the April 30th wind-event. In its denial letter, Foremost states that the basis for exclusion for interior water damages were "wear and tear", "marring", "scratching", and "mold". The letter does not advise that a cause for exclusion of interior water damages was leakage of rainwater through holes in the roof known to Foremost. Foremost does, however, include a reference to the exclusion term in reciting their basis for denial.

Subsequent to the initial denial, on October 4, 2019, Foremost issued a second claim letter, and again identified the damage to the dwelling was "a result of wear and tear, animal damage, *[sic]* improper installation of the drip edge." Foremost again denied coverage for shingles along the ridge of the roof, penetrations to the roof, and damage to a glass-sliding door. Foremost again did not inform the Wests that leakage of rainwater was damaging the home and did not instruct the Wests to tarp the roof.

4

The Wests employed an independent engineer, who determined the cause of damage to the shingles along the ridge and field of roof the home, the penetrations in the roof of the home, damage to the skirting of the home, damage to the tie-down system of the home, and the glass sliding door were caused by a high wind event. *Aff. of Travis Miller*, ¶¶ *3, 4, 5, 6, 7, and 9*. Further, Mr. Miller testifies that the damages to the ceilings, floors and interior finishes correlates to missing roof shingles caused by the high wind event. *Aff. of Travis Miller*, ¶ *8*.

The Wests allege that they promptly notified Foremost of the casualty loss and took all actions within their personal ability to protect the house (i.e. covering the exposure left by the broken glass-sliding door). Foremost they claim improperly denied coverage for covered perils, and then allegedly failed to inform the Wests of the true cause of exclusion and that their failure to remediate the causes would result in denial of coverage.

Plaintiffs filed suit against Foremost on December 23, 2019 and presented an Amended Petition on January 29, 2020. The Petition alleges Count I for breach of contract and Count II for vexatious refusal to pay against Foremost. The Petition claims that Plaintiffs' home "suffered severe damage resulting from the storm," and "Plaintiffs are protected under the policy for their loss."

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

### Count I: Breach of Contract

To state a claim for breach of contract under Missouri law, the Wests must prove: (1) the existence and terms of a contract; (2) that they performed or tendered performance pursuant to the contract; (3) breach of the contract by Foremost; and (4) damages suffered the Wests as a result of Foremost's breach. *See Nooter Corp. v. Allianz Unerwriters Ins. Co.*, 536 S.W.3d 251, 294 (Mo. Ct. App. E.D. 2017) (citing *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010)); *see also Braughton v. Esurance Ins. Co.*, 466 S.W.3d 1, 8 (Mo. Ct. App. W.D. 2015). Regarding the third element, breach is shown by establishing coverage under the insurance policy and non-payment of sums due by the insurer. *See Braughton*, 466 S.W.3d at 8; *see also* M.A.I. 31.09 (8th ed). Foremost argues that the Wests cannot prove coverage under the policy.

The interpretation of an insurance policy presents a question of law. *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015) (citing *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. banc 2014)); *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). "The general rule when interpreting an insurance policy is to give the language its plain meaning." *Id.* "Typically, it is the meaning that would be attached by an ordinary lay person of average understanding if purchasing insurance." *Id.*; *Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Maune*, 277 S.W.3d 754, 757 (Mo. Ct. App. E.D. 2009); *Seeck*, 212 S.W.3d at 132. The insured bears the burden of establishing coverage under the policy; the insurer bears the burden of establishing that an exclusion to coverage applies. *Taylor*, 457 S.W.3d at 344; *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 80 (Mo. Ct. App. W.D. 2005). "Exclusions are necessary provisions in insurance policies and are enforceable if they are clear and unambiguous." *Id.*; *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 843 (Mo. Ct. App. W.D. 2019) (citing *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007)).

1. <u>A genuine dispute of material fact exists as to whether some claimed damages were a "direct, sudden, and accidental physical loss to the property," and thus were covered by the policy.</u>

Foremost alleges that the Wests have not presented evidence that damages denied in the Wests' claim are the result of "direct, sudden, and accidental loss to the property", and thus summary judgment should be granted because the Wests cannot succeed in establishing the third requirement in proving a breach of contract. The Wests' expert Travis Miller testifies that damages to the shingles along the ridge of the roof, a blown-out glass sliding-door, a hole in the roof, damage to the skirting of the home, and loosened tie-down straps were caused by a high wind event. Costs for these damages were initially denied, and Foremost maintains denial for the shingles, door, hole in the roof and tie-down system. *Aff. of Travis Miller*, ¶¶ 3, 4, 5, 6, 7, and 9.

Further, Mr. Miller testifies that the damages to the ceilings, floors, and interior finishes correlates to missing roof shingles caused by the high wind event. *Id.* ¶ *8*. Foremost itself acknowledges that this evidence may be sufficient to overcome summary judgment on these claimed damages. A genuine issue of material fact exists as to whether the claimed damages are covered by the policy.

2. <u>Summary judgment is not appropriate based on policy exclusions because they would not eliminate the jury's role in determining the cause of damages.</u>

Foremost argues that even if the Wests were able to prove their loss is a "direct, sudden and accidental physical loss to the property," as is required to prove coverage under the policy, coverage would be defeated by the policy's exclusions based on the undisputed material facts and as a matter of law. The policy excludes "loss caused directly or indirectly by:" "Wear and tear, marring, scratching, deterioration, rust or other corrosion;" "Inherent vice, latent defect, mechanical breakdown, manufactured defect or mechanical failure;" "Mold, mildew, or other fungi, their secretions, and dry and wet rot of any kind;" and "leakage from rain, sleep or snow or its resulting damage whether or not wind driven.". "Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss."

For example, Miller and the Wests have conceded that some of the claimed damages were caused by excluded causes. Exclusion 11(a) excludes, "Loss caused by . . . Wear and tear, marring, scratching, deterioration, rust or other corrosion."

Foremost cites *Messina v. Shelter Mutual Insurance Company*, 585 S.W.3d 839 (Mo. Ct. App. W.D. 2019) for support that summary judgment is appropriate on the issues of policy exclusions. There, the court granted summary judgment in favor of the defendant insurance company based on similar facts, because the plaintiff's expert testified that the loss was caused by deterioration and corrosion over an extended period of time. *Id.*, *834-44*. Here, Defendant is correct that some damages were admittedly the result of conditions that fall under the policy exclusions,

however Miller also testified that he determined that the cause of claimed damage to the shingles along the ridge and field of the roof of the home, the penetrations in the roof of the home, damage to the skirting of the home, damage to the tie-down system of the home, and damage to the glass sliding door were caused by a high wind event. *Aff. of Travis Miller*, ¶¶ *3, 4, 5, 6, 7, and 9*. The jury could choose to concur with such testimony.

Causation is a factual determination that is "to be determined by the jury and not one to be dealt with as a question of law by the Court." *Walton v. Exkhart*, 354 F.2d 35, 38 (8th Cir. 1965). Even if the policy's exclusions were to apply to some of the damage conditions, it would still be up to a jury to determine if there were a single cause of an incident, or multiple causes including excluded perils and to determine the amount of the loss caused by covered perils. Accordingly, summary judgment cannot be granted on account of the policy's exclusions.

3. <u>Summary judgment is not appropriate as to whether Plaintiffs satisfied the "Policy Conditions" and whether or not their damages are attributable to their failure to mitigate.</u>

The "Policy Conditions" provide, "If you have a loss, you must protect your dwelling, other structures, or personal property from any further damage. If you fail to do so, any further damage will not be insured by this policy."

After the loss, the Wests did nothing other than clean the interior of the home and place a piece of OSB decking over the back door. They did not tarp the home, otherwise cover the openings to the outdoors, or remove their personal property. *Dep. of M. West (Supp.), 56:14-25*. To this day, the Wests have not taken action to protect from further damage. Nearly two years later, the manufactured home sits un-tarped and exposed to the elements. This almost certainly has magnified the extent of property damage and has increased the cost of repair. It is for the jury to determine the role this failure played in the amount of ultimate damage and loss.

9

Case 3:20-cv-05019-MDH   Document 64   Filed 04/22/21   Page 9 of 13

The Wests argue that the terms of the Policy Conditions are ambiguous and create a "Catch-22" for insureds that make it impossible to perform repairs and contest policy determinations of the insurance provider. When interpreting an insurance policy, a court must "give terms their plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. banc 2008). If the policy language is unambiguous, it must be enforced as written. *Id.* However, if the language is ambiguous, courts should construe the policy in favor of the insured. *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). "[A]mbiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different interpretations." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation marks and citation omitted). "In construing insurance policies, Missouri courts apply the meaning which would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured." *Williams v. Employers Mutual Cas. Co.*, 845 F.3d 891, 902 (8th Cir. 2017).

The Wests point to another policy condition that prohibits insureds from expending funds or making payments to repair an insured property, stating "You may not, except at your own cost, voluntarily make any payments, assume any obligation or incur any expenses. This provision does not apply to First Aid Expenses or Emergency Repairs After Loss." (*Doc. 63 Ex. 1, P. 18*). The Wests do not point to the language that states that the provision applies to emergency repairs after loss. The Policy includes "Emergency Repairs After Loss" as an additional coverage. This coverage states, "We will pay any actual, reasonable and necessary expenses for emergency repairs incurred in protecting your insured property from further damage if the damage was caused by an Insured Peril. No deductible will apply to this coverage." This expressly and unambiguously

provides that any actions taken to protect from further damage will be covered. It is not clear whether the insureds requested any reimbursement or advance payment under this policy provision. The Wests were issued payment for tarping, including the purchase of tarp and labor costs in its initial $1763.84 payment to the Wests. (*Doc. 57 Ex. 6*).

The Wests also argue they are not bound by the Policy Conditions because Foremost failed to disclose "rainwater leakage" as a cause of damages to the interior of the home and failed to instruct the Wests on how to remediate the home in a manner that would not exclude coverage. However, Foremost advised the Wests of rainwater leakage as a basis for supporting its coverage determination. Foremost's May 14, 2019 letter to the Wests provided:

> You may wish to review these provisions of your Homeowners Insurance for Manufactured Homes policy 4085 dated 01/08, as endorsed. They form the basis for our decision: [ ] We do not insure loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. [ ] Loss caused by leakage from rain, sleet or snow or its resulting damage whether or not wind-driven.

(*Doc. 63 Ex. 6, ¶ 18 at F0069-70*). The Wests had a duty to examine their insurance policy; they are deemed to know the contents of the instrument, whether they read it or not, and are bound by the terms if the policy is maintained. *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apt., LC*, 572 F.3d 511, 515 (8th Cir. 2009) (citing *Jenkad Enters., Inc. v. Transp. Ins. Co.*, 18 S.W.3d 34, 38 (Mo. Ct. App. E.D. 2000)); *Shelter Mut. Ins. Co. v. DeShazso*, 955 S.W.2d 234 (Mo. Ct. App. S.D. 1997); *U.S. v. Home Life Ins. Co.*, 508 F.Supp.559, 564 (E.D.Mo. 1980).

The Wests took no action to protect their home after the April 30, 2019 storm other than minimal cleaning and partially covering the back door. The policy contained clear language under its "Policy Conditions" as to the requirement to protect the property, and Foremost issued payment for a tarp for the roof and labor costs to install the tarp. A reasonable consumer would understand that obligation. It is undisputed that the condition of the home has significantly worsened since the

alleged date of loss due to the failure to protect the home or take remedial action. However, whether or not the Wests took the measures to protect the manufactured home under the "Policy Conditions" and the impact any such failure had on the extent of damage are issues of fact appropriate for a jury. Similarly, the determination of the extent that any alleged failure to protect the home caused claimed damages is an issue of causation reserved for a jury.

## Count II: Vexatious Refusal

To state a claim for vexatious refusal under Missouri law, the Wests must prove: (1) they had an insurance policy with Foremost; (2) Foremost refused to pay; and (3) the refusal was without reasonable cause or excuse. *Progressive Pref. Ins. Co. v. Reece*, 498 S.W.3d 498, 506 (Mo. Ct. App. W.D. 2016) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006)). "However, where an insurer had no duty to pay under the insurance policy, there cannot be a claim for vexatious refusal to pay." *Id*. (citing *Arch Ins. Co. v. Sunset Fin. Servs., Inc.*, 475 S..3d 730, 735 (Mo. Ct. App. W.D. 2015); *View Home Owner's Association v. The Burlington Ins. Co.*, 552 S.W.3d 726 (Mo. Ct. App. 2018); *BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 334-35 (8th Cir. 2013). Whether the claimed damages are covered by the policy, and whether Foremost acted vexatiously is not beyond dispute based on the agreed upon facts. For the reasons above, summary judgment is not appropriate. Whether the issue will be ultimately submitted to the jury at trial will be determined when revisited by the Court at the close of Plaintiff's evidence.

## CONCLUSION

The policy at issue indisputably provides coverage for damages which are the result of "direct, sudden, and accidental physical loss to the property." The damages wear, tear, deterioration, or corrosion fall outside of the policy's coverage and fall within the policy's explicit

exclusions. The Wests have an obligation under the policy to protect their manufactured home after the damage took place. The issue of the causation of Wests damages, however, are issues of facts best submitted and ultimately resolved by a properly instructed jury. If, after the presentation of evidence, it appears no reasonable jury can conclude one or more claimed items of damages fall within the coverage provided or is excluded under the policy the Court can and will enter the necessary order and an appropriate limiting instruction. The need for and scope of any such order and instruction is not clear at this time and is more appropriately left to be made after the presentation of evidence. For the reasons set forth in this Order, Defendant's Motion for Summary Judgment (Doc. 56) is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated: April 22, 2021                                                        */s/ Douglas Harpool*
                                                                              **DOUGLAS HARPOOL**
                                                                              **United States District Judge**